UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VENTURE INDUSTRIES CORPORATION,
VEMCO, INC., PATENT HOLDING COMPANY,
and LARRY J. WINGET,

    Plaintiffs,

v.

Case No. 99-75354
Hon: AVERN COHN

AUTOLIV ASP, INC.,

    Defendant.

_____/

# ORDER REGARDING PREJUDGMENT AND POST-JUDGMENT INTEREST

## I. Introduction

This is a contract case tried to a jury and affirmed on appeal. Before the Court is plaintiffs,[1] Venture Industries Corp., Vemco, Inc., Patent Holding Company, and Larry J. Winget (collectively, Venture), motion to determine prejudgment interest.[2] Venture seeks a ruling that prejudgment interest is calculated from November 3, 1999, the date the complaint was filed, through September 27, 2007, the date the mandate issued from the Court of Appeals for the Federal Circuit on Autoliv's second appeal.[3]

---

[1] At the hearing on Venture's motion to determine prejudgment interest, the parties agreed that the sole plaintiff is Venture. The Court directed the parties to submit a proposed order to that effect. Since the proposed order has not yet been received or entered, the case captions contains all of the named plaintiffs.

[2] Also before the Court is Venture's motion for reconsideration of the Court's October 3, 2007 Order regarding Autoliv's letter of credit. That motion is the subject of a separate order.

[3] The desire to have such an expansive period of prejudgment interest is not surprising as prejudgment interest rates are significantly higher than post-judgment

Defendant Autoliv, Inc. (Autoliv) says that prejudgment interest runs from November 3, 1999 to December 4, 2003, the date the Court entered a judgment on the jury verdict and that post-judgment interest begins thereafter.

For the reasons that follow, Venture is entitled to prejudgment interest from November 3, 1999 to December 4, 2003, which has already been calculated as $6,902,251.00. Venture is entitled to post-judgment interest thereafter.

## II. Background

On November 3, 1999, Venture sued Autoliv for failing to allow Venture to supply air bag covers to Autoliv in breach of an agreement. The jury returned a verdict in favor of Venture. On December 4, 2003, the Court entered a judgment on the jury verdict in the amount of $27,576.001.00. Venture then filed a motion to amend the judgment in part to include prejudgment interest. On April 7, 2004, the Court entered a Memorandum and Order on Prejudgment Interest, awarding Venture prejudgment interest in the amount of $5,878,972. The Memorandum stated that an amended judgment would enter "nunc pro tunc December 4, 2003." That same day, the Court entered an Amended Final Judgment including the amount of the jury verdict plus prejudgment interest and costs. The Amended Final Judgment also stated that it was "nunc pro tunc December 4, 2003 for purposes of computing interest."

Autoliv appealed from the jury's verdict and the Court's denial of its Rule 60(b) motion. Venture cross-appealed on the issue of the manner of calculating prejudgment interest. Venture argued that prejudgment interest should accrue at the date of filing the

---

interest rates.

complaint. On August 7, 2006, the Court of Appeals for the Federal Circuit separately issued its decisions on Autoliv's appeal and Venture's cross appeal. As to Venture's cross-appeal, the Federal Circuit agreed with Venture and vacated the Court's calculation of prejudgment interest and directed that the start date for prejudgment interest was the filing of the complaint. As to Autoliv's appeal, the Federal Circuit vacated and remanded for consideration Autoliv's motion for a new trial under Rule 60(b)(3).

Accordingly, on November 29, 2006, the Court entered an Order Amending Judgment, calculating prejudgment interest from the date the complaint was filed. The Order stated that "Prejudgment interest has been recalculated as required, and is $6,902,251.00 as of December 4, 2003." On that day, the Court also entered a Second Amended Final Judgment to reflect the difference in prejudgment interest. The Second Amended Judgment, like the Amended Judgment, stated that it was "<u>nunc pro tunc</u> December 4, 2003 for purposes of computing interest." Venture did not take an appeal from this judgment.

Meanwhile, the Court considered Autoliv's Rule 60(b)(3) motion in accordance with the Federal Circuit's decision. On November 29, 2006, the Court denied Autoliv's motion. Autoliv again appealed. On July 16, 2007, the Federal Circuit affirmed the Court's decision. The mandate issued on September 27, 2007.

### III. Analysis

#### A.

Venture argues that interest from the time the complaint was filed until the mandate issued should be considered prejudgment interest. Autoliv says that pre-judgment interest runs from the time the complaint was filed until December 4, 2003; thereafter, interest accruing is considered post-judgment interest. Thus, the issue is what affect, if any, is the December 4, 2003 judgment under the circumstances.

The Michigan statute regarding prejudgment interest states that "interest on a money judgement recovered in a civil action is calculated ... from the date of filing the complaint ... on the entire amount of the money judgement, including attorney fees and costs." M.C.L. § 600.6013(8). Under this statute, prejudgment interest must be calculated on the entire judgment from the date that the complaint was filed. Perceptron, Inc. v. Sensor Adaptive Machs., Inc., 221 F.3d 913, 923 (6th Cir.2000)

While prejudgment interest is determined by reference to state law, the Court of Appeals for the Sixth Circuit has made clear that "the question of which judgment should be used to trigger interest is a matter of federal law." Coal Resources, Inc. v. Gulf & Western Indus., Inc., 954 F.2d 1263, 1274 (6th Cir. 1992) (citing Bailey v. Chattem, Inc., 838 F.2d 149, 152 (6th Cir. 1988). Thus, the date for determining the line between pre and post judgment interest is controlled by federal law. 28 U.S.C. § 1961 states:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment....

In Kaiser Aluminum & Chem. Corp v. Bonjorno, 494 U.S. 827 (1990), the Supreme Court held that the trigger date for the accrual of post judgment interest is the date of the judgment in which damages have "been ascertained in a meaningful way."

4

Id. at 836. In Kaiser, the district court set aside the jury's initial findings on damages, holding that they were not supported by the evidence. A new judgment was entered after a limited re-trial. Id. at 830. The Supreme Court concluded that since the first trial was not supported by the evidence, it did not represent a meaningful assessment of the damages. Thus, post-judgment interest began to accrue after entry of the second judgment. Id. at 836.

      Subsequent cases in the Sixth Circuit adhere to this rule. Following Kaiser, the Sixth Circuit in Coal Resources, supra, held that the post-judgment interest began on the date of the original judgment because the original award had not been vacated on appeal even though it has been reduced by the court-ordered remittitur. The damages were meaningfully ascertained from the original judgment. Id. at 1274-1275. In Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413 (6th Cir. 1990), the plaintiffs received an award following a trial and a judgment entered in their favor. The Sixth Circuit vacated and remanded the case for a new trial because of an error of law. After a re-trial, plaintiffs again prevailed. Plaintiffs argued that post-judgment interest accrued as of the date of the original judgment. The district court disagreed and awarded post-judgment interest from the date of the judgment after the second trial. The Sixth Circuit affirmed, noting that the damages were meaningfully ascertained after the second judgment since the original judgment was vacated. Id. at 1447. See also Adkins v. Asbestos Corp., Ltd., 18 F.3d 1349, 1352 (6th Cir. 1994) (post-judgment interest runs from the "date of any judgment that is not entirely set aside"); Skalka v. Fernald, Envtl. Restoration Mgmt. Corp., 178 F.3d 414, 429 (6th Cir. 1999) (damages suffered by the plaintiffs were meaningfully ascertained after the second trial since original judgment

5

was vacated in its entirety on the first appeal).

Here, the damages amount reflected in the jury verdict as stated in the December 4, 2003 judgment has never been set aside. All subsequent judgments were specifically entered "nunc pro tunc December 4, 2003 for purposes of computing interest." Therefore, the appropriate date for determining when damages were meaningfully ascertained and triggering the post-judgment period is December 4, 2003. The essential damages portion of the judgment - the jury verdict - has never been modified, vacated, or rendered incomplete at any time since the date of entry.

Likewise, Venture's argument that prejudgment interest should be calculated through at least the November 29, 2006 Second Amended Judgment is unavailing because that judgment, like the Amended Judgment, was entered nunc pro tunc December 4, 2003.

**B.**

Venture, however, takes the position that prejudgment interest accrues until the date the Federal Circuit issued its mandate following Autoliv's second appeal from the denial of its Rule 60(b) motion. In support, Venture cites Michigan cases which it says provide authority for the proposition that prejudgment interest accrues during "prejudgment appellate delay." Ayar v. Foodland Distrib., 472 Mich. 713, 716-17 (2005); Morales v. Auto-Owners Ins., Co., 469 Mich. 487, 491-92 (2003). Venture also cites a federal case interpreting Michigan law on the issue of prejudgment interest, Wrench LLC v. Taco Bell Corp., 290 F. Supp. 2d 821 (W.D. Mich. 2003).

Venture's reliance on these cases is wholly misplaced. First, Ayar involved the issue of when prejudgment interest accrues on an award of costs and mediation

sanctions which the Michigan Court of Appeals held begins at the time the complaint was filed. It did not address the issue of prejudgment interest running during the appellate process. Thus, Ayar provides no support for Venture's argument.

In Morales, the plaintiff/insured sued defendant/insurer seeking no-fault coverage following an accident. The trial court granted the insurer's motion for summary disposition. The Michigan Court of Appeals affirmed. The Michigan Supreme Court reversed and remanded the case for trial. Morales v. Auto-Owners, 458 Mich. 288 (1998). After a trial, a jury found for the plaintiff. The trial court entered a judgment on the jury verdict and awarded prejudgment interest for the entire period, including the time the case was on appeal. The Michigan Supreme Court affirmed the trial court's calculation of prejudgment interest, noting that "the statute [M.C.L. § 6000.6013(8) makes no exception for periods of prejudgment appellate delay." 469 Mich. at 852.

In Wrench, the plaintiffs sued defendant claiming breach of implied contract and various torts related to defendant's alleged use of their ideas relating to a cartoon character. The district court originally granted summary judgment to defendant. Plaintiffs appealed. The Court of Appeals for the Sixth Circuit reversed and remanded the case for trial on several claims. Wrench v. Taco Bell LLC, 256 F.3d 446 (6th Cir. 2001). After a trial, a jury found in favor of plaintiffs and the district court entered an amended judgment. The district court then awarded plaintiffs prejudgment interest from the time the complaint was filed to the date of entry of an amended judgment awarding interest, which encompassed the time the case was on appeal.

What Venture fails to appreciate, or perhaps failed to discover, is that both Morales and Wrench involved the situation where the initial judgment was for the

7

defendant and it was only <u>after</u> an appeal and reversal that the case went to trial and a judgment entered in favor of the plaintiffs. In that circumstances, an award of prejudgment interest during the appeal process is consistent with Michigan law on prejudgment interest because the plaintiff did not obtain a judgment in their favor until after the appeal. It is also consistent with federal law on post-judgment interest because it was only after the appellate process that the damages, <u>i.e</u>. a jury verdict, was "meaningfully ascertained." Here, however, Venture obtained a judgment in their favor at trial <u>before</u> an appeal. Holding that the dividing line for pre-judgment and post-judgment interest is the date of entry of judgment in Venture's favor, December 4, 2003, is consistent with <u>Morales</u> and <u>Wrench</u>. Moreover, it is noted that <u>Wrench</u> did not cite the Supreme Court's decision in <u>Kaiser</u> or any of the Sixth Circuit decisions addressing the line between pre and post-judgment interest.

**C.**

In its reply brief, Venture cites <u>Scotts v. Central Garden & Pet Co.</u>, 403 F.3d 781 (6th Cir. 2005) to support its argument that "the latest judgment should be used as the stop date for state-law prejudgment interest and start date for post-judgment interest." In <u>Scotts</u>, the plaintiff/manufacturer (Scotts) sued defendant, its distributor (Central), for breach of contract and quasi contract. Central filed counterclaims for breach of contract. In May of 2002, the jury returned a verdict in favor of Scotts for $22.5 million and a verdict in favor of Central for $12.075 million. The verdict in favor of Scotts was based entirely on its breach of contract claim. The verdict in favor of Central was composed of four parts, one part being an award of $750,000.00 for breach of contract on an incentive-compensation issue. On May 16, 2002, the district court entered a

judgment on the jury's verdict. The judgment, as stated in the district court's docket sheet entry, provided as follows:

> An award of $22,500.00 [sic] in favor of plf Scotts on its claim against dft Central Garden for breach of contract. An award of $7,700,000 in favor of dft counter-plf Central Garden on its claim against Scotts for breach of contract for pymt of agency fees; an award of $3,275,000 in favor of Central Garden on its claims against Scotts for excess shipments; an award of $750,000 in favor of Central Garden on its claim against Scotts for breach of contract for incentive compensation; and an award of $350,000 in favor of Central Garden on its claim against Scotts for Miracle Gro subject to the right of return, which yields a total award of $12,075,000 in favor of dft Central Garden against plf Scotts as to all of Central Garden counterclaims (cc: all counsel) ( no pgs: 1) (sh) (Entered: 05/17/2002)

Scotts then filed a Rule 59(e) motion to alter or amend with regard to the $750,000.00 incentive award.

Central also filed a Rule 59(e) motion on grounds that are not clear. On September 30, 2002, the district court entered an Order and Amended Judgment which granted Central's motion. The district court's docket sheet shows the following entry:

> ORDER AND AMENDED JUDGMENT by Judge Edmund A. Sargus Jr granting motion to amend jgm [195-1];7,700,000 in favor of dft counter-plf Cen Gar against Scotts for breach of contract; $3,275,000 in favor of Cen Gar against Scotts for excess shipments; $750,000 in favor of Cen Gar against Scotts for breach of contract for incentive compensation; $350,000 in favor of Cen Gar against Scotts for MiracleGro, which yields a total award of $12,075,00 in favor of dft Cen Gar against plf Scotts as to all of Cen Gar's counterclaims (cc: all counsel) ( no pgs: 3) (sh) (Entered: 09/30/2002)

The jury verdict amounts were not changed; however, the language describing the component parts was changed. There is no indication that the Amended Judgment was entered <u>nunc pro tunc</u> of the May 16, 2002 Judgment.

Subsequently, the district court granted Scott's motion to alter or amend and set aside the $750,000.00 award in favor of Central for lack of evidence.

9

Both parties also moved for prejudgment interest. The district court directed them to confer on the net amount of prejudgment interest they owed each other. After doing so, they agreed that "2,827,123.65 is the net amount of prejudgment interest that has accrues in favor of plaintiff Scotts though May 16, 2002." On September 22, 2003, the district court entered a Final Amended Judgment which awarded Scotts the full amount of the jury verdict ($22.5 million) and Central $11.325 million (reflecting the $750,000.00 reduction from the Rule 59(e) motion). It also awarded Scotts prejudgment interest through May 16, 2002 - the date of the original judgment on the jury's verdict. The district court awarded Scotts post-judgement interest from May 17, 2002 through the date of payment. There is no indication on the Final Amended Judgment that it was entered <u>nunc pro tunc</u> to May 16, 2002.

Despite the parties' agreement on prejudgment interest noted above, they disagreed as to the date through which prejudgment interest ran. Central argued that it stopped at the date of entry of the judgment on the jury verdict - May 16, 2002. Scotts argues that it accrued until a final appealable order was entered - the Final Amended Judgment on September 22, 2003. The district court held that the cut off date for post judgment interest was May 16, 2003.

On appeal, the Sixth Circuit reversed, finding that September 22, 2003 was the cut off date for prejudgment/post-judgment interest, explaining:

> Under 28 U.S.C. § 1961(a), which controls postjudgment interest in civil cases decided in the federal district courts, postjudgment "interest shall be calculated from the date of the entry of the judgment." The Supreme Court has interpreted this statute to require interest to run from the date of the entry of judgment by the court rather than from the date of the jury verdict. <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). This circuit has held that postjudgment interest can run "from the date of any

10

judgment that is not entirely set aside." Skalka v. Fernald Envtl. Restoration Mgmt. Corp., 178 F.3d 414, 429 (6th Cir.1999).

As the district court noted, the Ninth Circuit addressed an issue similar to the one that faces us here and held that postjudgment interest should accrue from the date of the final judgment. See AT & T Co. v. United Computer Systems, Inc., 98 F.3d 1206, 1211 (9th Cir.1996) (calculating postjudgment interest from the later of two possible dates of judgment, where the prejudgment interest was higher than the postjudgment interest, on the ground that "[w]here a prior judgment awarding damages has been vacated pursuant to the actions of an ultimately losing party, equitable principles favor calculating the interest in a manner that more fully compensates the prevailing party"). The district court attempted to distinguish AT & T by stating that "there is only one judgment in this case-the Rule 54(b) judgment entered on May 16, 2002."

This is incorrect. At least two judgments were entered after May 16, 2002, including a September 30, 2002 amended judgment and a September 22, 2003 final amended judgment. Several judgments were also entered before the jury verdict, but those judgments are not candidates for the date that postjudgment interest begins because the damages due were not sufficiently ascertained. Cf. AT & T, 98 F.3d at 1210.

The justification given by the Ninth Circuit for calculating postjudgment interest from the date of final judgment applies with equal force in the present case. Although both parties received jury awards, Scotts was clearly the "prevailing party." Id. at 1211. Scotts was awarded $22.5 million of its $23.8 million claim; Central was awarded only $12.075 million of the originally requested sum of $976 million (and this award was further reduced by the district court). Because the prejudgment-interest rate on all of the claims is substantially higher than the postjudgment-interest rate, the district court's decision to start postjudgment interest from the May 16, 2002 judgment on the jury verdict grants an unjustified benefit to Central as the losing party. This equitable imbalance could have been avoided if the district court had ruled that postjudgment interest did not begin until the September 22, 2003 final amended judgment. We therefore reverse the district court's ruling on this issue, and set the date at which postjudgment interest begins to run at September 22, 2003.

Scotts, 403 F.3d at 792-93.

Although the holding in Scotts might support a finding that the dividing line between pre-judgment and postjudgment interest should be January 20, 2004 - the date of the Final Judgment, there is no indication that the judgments in Scotts were entered

11

nunc pro tunc. It is also noted that nothing in Scotts supports Venture's argument that the dividing line should be the date of the Federal Circuit's mandate.

Additionally, the rationale for the Sixth Circuit's holding in Scotts to move the date for starting post judgment interest was to avoid inequity. It cannot be said under the circumstances that it would be inequitable to use December 4, 2003 as the dividing line between pre and post-judgment interest. The Amended Judgment and Second Amended Final Judgment were both entered "nunc pro tunc December 4, 2003 for purposes of computing interest." This language clearly implies that the dividing line for pre and post-judgment interest has always been contemplated to be December 4, 2003. The litigation history of the prejudgment interest issue supports this date as the demarcation. Moreover, the issue before the Federal Circuit as to prejudgment interest was the start date, not the end date.

SO ORDERED.


Dated: October 30, 2007         s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 30, 2007, by electronic and/or ordinary mail.


                                s/Julie Owens
                                Case Manager, (313) 234-5160